due exercise of it. It is his duty to prevent, as far as he may, any undue exercise of authority by his subordinate officers, and any abuses, injuries and trespasses by them. If he is present, when any of the subordinate officers inflict chastisement upon the crew, he is bound in duty to interfere, and restrain it, if it is improper in its nature or character, or unjustifiable under the circumstances. If he may interfere, and he does not, he must be deemed to assent to, and encourage it; for no officer in his presence has any right to inflict punishment without his assent or direction, unless upon an emergency, which admits of no delay. It is not sufficient for him to excuse himself from this interposition, upon any notions of courtesy, or of upholding the authority of the officers, or of supporting the harmony and discipline of the ship. The law has entrusted him with summary powers, for the good, not of the officers alone, but of the crew also, and indeed for the general good of the maritime service, in which he is engaged. While he should uphold the just discipline of the ship with a steady confidence, he is to take care, that the crew are not made the victims of the insolence, the passions, or the caprices of the officers under him. If he will stand by, and see the seamen cruelly, brutally and unjustifiably beaten without interference, he ought not to complain, that the law forces upon him the conclusion, that he approves what is done, and means to encourage it by his silence and his authority. He becomes thereby the abettor and supporter of the deed, upon the reasonable ground, that he, who knowingly allows oppression, shares the crime. Such, in my opinion, is the dictate of the law on this subject; and it is wholesome as an admonition and a preventive against the undue resentment and oppression of officers, which so often end in the open mutiny and rebellion of the injured crew. On this head I follow out, with unhesitating confidence, the able argument of the learned counsel for the libellant.

The view, which has already been taken of the case, upon the point of jurisdiction, renders it unnecessary to consider the merits of the controversy, which have been so elaborately and analytically brought out in the argument, and to the force and acuteness of which no one is more ready to pay a voluntary homage than myself. My duty is to dismiss the libel, as to the appellant, the only party before the court, for want of jurisdiction; but there can be no costs allowed, where the court dismisses the suit, for such a cause. Libel dismissed.

## Case No. 13,903.

### THOMAS v. MACKALL.

[5 Cranch, C. C. 536.] [1]

Circuit Court, District of Columbia. March Term, 1839.

WITNESS—COMPETENCY—INTEREST—SLAVES.

Neither the complainant nor his wife can be examined as a witness against the defendant in a bill for injunction to restrain the defendant from removing from the District of Columbia the plaintiff's slave who had been sold by the plaintiff to the defendant for a term of years only, at the expiration of which term the slave is to be free.

Bill in equity to restrain the defendant [Brooke Mackall] from removing the plaintiff's female slave from the District of Columbia; the slave having been sold by the plaintiff [James Thomas] to the defendant for a term of years only, after which she was to be free, although not yet manumitted, and having two or three years yet to serve the defendant; the complainant having the reversionary right to the slave in himself, for the purpose of manumitting her.

Mr. Bradley, for complainant, asked leave to take the deposition of the complainant and his wife, to be read at the hearing, contending that the complainant was merely acting as the prochein ami of the slave.

R. J. Brent, contra, objected that the complainant was interested, having the reversionary right to the services of the slave, and also liable for costs and damages upon the injunction bond, in case the decree should be against him, and cited Medley v. Jones, 5 Munf. 98.

Mr. Bradley, in reply, contended that a prochein ami is a competent witness, although liable for costs, or new security for costs may be given, and he will be called to swear against his interest, for he will prove that the slave will be entitled to her freedom at the expiration of the present term of service. He cited Wheeler, Law Slav. 184; Lupton v. Lupton, 2 Johns. Ch. 626; Starkie, Ev. pt. 4, p. 785, note; Goss v. Tracy, 1 P. Wms. 287; Mulvany v. Dillon, 1 Ball & B. 413; Dixon v. Parker, 2 Ves. Sr. 222; Murray v. Shadwell, 2 Ves. & B. 401; Lee v. Atkinson, 2 Cox, 413; Rogerson v. Whittington, 1 Swanst. 39.

But THE COURT (THRUSTON, Circuit Judge, absent) refused to permit the complainant or his wife to be examined as a witness.

1 [Reported by Hon. William Cranch, Chief Judge.]